| | |
|---|---|
| ROBERT JEREMY HAYNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| FNU QUINN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF
DECISION AND ORDER**

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 46].  Also pending are the Plaintiff's pro se Motion in Limine [Doc. 54], Moton to Stay [Doc. 58] and Motion for Spoliation [Doc. 59], and the Defendants' Motion to Stay [Doc. 57].

## I.   BACKGROUND

The pro se Plaintiff filed this action pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred at the Alexander Correctional Institution where he is incarcerated. The unverified Amended Complaint passed initial review against Matthew Lay, a correctional officer, and Tiffany Starrette, a nurse, for Eighth Amendment violations, and against Lay for retaliation.[1] [Doc. 8: Amended Complaint; Doc. 9: Order on Initial Review].

The Defendants filed a Motion for Summary Judgment and supporting materials.  [Doc. 46: MSJ; Doc. 47: MSJ Exhibits; Doc. 48: Sealed MSJ Exhibits; Doc. 67: Thumb Drive]. The Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and

---

[1] The superseded Complaint and a piecemeal "Amended Complaint," which was stricken, are also unverified. [Doc. 1: Complaint; Doc. 6: Stricken "Amended Complaint"].

of the manner in which evidence could be submitted to the Court. [Doc. 50: <u>Roseboro</u> Order]. The Plaintiff filed a Response and supporting materials. [Doc. 60: MSJ Response; Doc. 60-1: Plaintiff's Exhibits; Doc. 61: Plaintiff's Med. Exhibits]. The Defendants did not reply. [<u>See</u> Doc. 64: Notice].

Also pending are several motions. In his Motion in Limine, Plaintiff argues that the Defendants have violated Rule 404(b) by listing Plaintiff's prison infraction history and his criminal convictions, despite Plaintiff not placing his character at issue in this action. [Doc. 54: MIL]. The Defendants move to stay their response to the Motion in Limine until after their dispositive motion is resolved, if necessary for trial. [Doc. 57: Defense Motion to Stay].

The Plaintiff has filed Motions addressing the Defendants' alleged destruction or failure to preserve video evidence. [Doc. 58: Plaintiff's Motion to Stay; Doc. 59: Motion for Spoliation]. The Plaintiff argues that, within a week of the incident, he requested video of a second-shift nurse instructing staff to loosen Plaintiff's restraints. He characterizes this as "critical evidence" that would prove his claims. [Doc. 58 at 1]. Despite Plaintiff's request, Defendants or their employers failed to preserve, or intentionally destroyed the video. Plaintiff argues that Court should find intentional spoliation. In the Motion for Spoliation, the Plaintiff asks the Court to provide an adverse inference instruction at trial. In the Motion to Stay, the Plaintiff asks that the Court dismiss or deny the Motion for Summary Judgment. The Defendants deny spoliating evidence and argue *inter alia* that the Plaintiff should have sought relief during the discovery period.

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A

2

fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some

3

metaphysical doubt as to the material facts ….  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

## III.    FACTUAL BACKGROUND

The relevant forecast of evidence viewed in the light most favorable to the Plaintiff shows the following.[2]

On February 23, 2024 at around 8:30 a.m., the Plaintiff was "exchanging words" with Defendant Lay on the way to a disciplinary hearing when Lay suddenly grabbed the Plaintiff and dragged him down a hallway.  [Doc. 60-1 at 27: Plaintiff's Decl. at ¶ 2; Doc. 47-17: Lay Decl. at ¶ 4; <u>see</u> Doc. 47-5: Defense Exh. (Incident Report)]. Plaintiff felt that Lay was trying to "display dominance," so Plaintiff "resisted" by planting his feet to stop the escort. [Doc. 60-1 at 27: Plaintiff's Decl at ¶ 3; Doc. 47-17: Lay Decl. at ¶ 4]. Lay told the Plaintiff to stop resisting and he placed Plaintiff against the wall to gain control. [Doc. 47-17: Lay Decl. at ¶ 5]. In the middle of the escort, Lay was replaced by another officer. [<u>Id.</u>].  Lay "lied" to the unit manager, saying that the Plaintiff had threatened to spit on someone,[3] so Plaintiff was placed in full restraints at 8:48

---

[2] The Plaintiff's unverified Complaint, stricken "Amended Complaint," and operative Amended Complaint cannot be considered on summary judgment as a forecast of evidence.  <u>See</u> <u>generally Goodman v. Diggs</u>, 986 F.3d 493 (4th Cir. 2021) (a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes).

[3] According to Defendant Lay, the Plaintiff cursed and threatened to spit on the disciplinary hearing officer ("DHO")

a.m. [Id.].

About an hour later, the Plaintiff fell in his cell; he denied needing medical attention. [Doc. 47-5: Defense Exh. at 1 (Incident Report); Doc. 47-5: Defense Exh. at 43 (4/22/24 Statement of Dirriel Kale Jr.); Doc. 47-5: Defense Exh. at 45 (4/22/24 Statement of Wesley Adkins)]. At 11:49 a.m., Lay and Franks took the Plaintiff to the shower. Plaintiff complained that his neck was hurting so the officers took him to medical. [See Doc. 47-5: Defense Exh. at 1 (Incident Report)]. The Plaintiff was then transported to an outside emergency room. [Id.].

Upon returning to Alexander CI, the Plaintiff was searched by Officers Lay and Campbell. [Id.]. Shortly after 5:00 p.m., the Plaintiff was given a smock and he was placed in full restraints by Lay and Adkins at around 5:15 p.m. [Id.; Doc. 47-5: Defense Exh. at 46 (4/22/24 Statement of Wesley Adkins)]. Lay applied restraints, and they were checked by Nurse Starrette at approximately 5:20.[4] [Doc. 47-5: MSJ Ex at 22 (Starrette Statement: "On 2/23/24 at approx. 1720 restraint check completed….")]. The Plaintiff was then escorted to a cell where he sat for several hours.[5] [Doc. 60-1: Plaintiff's Decl. at ¶ 8].

The Plaintiff then underwent a step-down process where officers removed a piece of the restraints every two hours. The connecting strap was removed at around 7:20 p.m. (19:20 hours); the leg restraints were removed at round 9:20 p.m. (21:20 hours); the waist strap was removed at around 11:20 p.m. (23:20 hours); and the hand restraints were removed at around 1:20 a.m. (01:20 hours). [Doc. 47-5: Defense Exh. at 48 (5/15/24 Statement of Isidro Rangel)].

---

on the way to a disciplinary hearing. [Doc. 47-17: Lay Decl. at ¶ 4].

[4] The Plaintiff contends that Lay applied the restraints as tightly as he could, causing the Plaintiff immediate extreme pain, and that Starrette approved them despite knowing they were too tight. [Doc. 60-1: Plaintiff's Decl. at ¶ 7]. The Court need not accept this because it is refuted by the video evidence. Scott, 550 U.S. at 380.

[5] The Plaintiff contends that he experienced pain and poor blood circulation for several hours because of the excessively tight restraints. Scott, 550 U.S. at 380.

5

Approximately three hours after the restraints were applied (around 8:20 p.m.), Nurse Ketchum[6] came to do a restraint check and medication call.  [Doc. 60-1 at 27: Plaintiff's Decl. at ¶ 9].  Ketchum instantly saw that the restraints were too tight and ordered Officer Davis[7] to loosen them.  [Id. at ¶ 10].  Ketchum made no comment about the tight restraints in her notes, because "to do so would be admitting her fellow nurse had approved too-tight restraints." [Id. at ¶ 11].

Nurse Ketchum's notes from around the time of the second step-down at 9:20 p.m. reflect the following:[8]

> Offender A/Ox4, self-ambulatory, compliant & calm, denies pain/discomfort, medical staff conducted soft restraint check, pedal/radial P present, 1 finger wrist, 4 finger waist, 2 finger ankle, w/o s/s of skin breakdown/ injury.

[Doc. 48-1: Defense Exh. at 20 (2/23/24 21:31 Admin. Note by Ketchum)].

The next day, the Plaintiff made the following statement for the incident report:

> Me and Officer Lay were arguing and he pulled me as Officer Kale held my other arm making it impossible for me to walk. View the video footage. As far as my arguing that is my right of the First Amendment. I did not threaten or anything. I told Officer Lay he was a chump for bullying me and talking junk while thinking I'm helpless in restraints.  He then began pulling me and pushing me.  Because he is in fact a chump.  And I have a right to say so.  Officer Lay and Officer Kale were playing tug a war with me. Using me as the rope. Review the camera. I was put in full restraints for nothing! I am filing a 1983 on Unit Manager Quinn. You want to write someone up write Lay up.

[Doc. 47-4 at 17 (2/24/24 18:01 witness statement by Robert Haynes; signed "2/23/24 1800"); see Doc. 47-5 at 30 (4/22/24 form indicating that the Plaintiff refused to make a statement on that date)]. Plaintiff requested "video footage of me being pulled by officer Lay."  [Id.].

---

[6] Nurse Ketchum is not a defendant in this case.

[7] Officer Davis is not a defendant in this case.

[8] It is unclear whether Nurse Ketchum conducted two restraint inspections, a wholly undocumented check at 8:30 p.m. at which time she ordered Plaintiff's restraints to be loosened, then a second check at around 9:20; or whether a single inspection and order to loosen the restraints occurred at around 9:20 p.m.

The Plaintiff filed a grievance less than a week later, mentioning that the incident with Ketchum could be seen on a camera. [Id. at ¶¶ 12-13]. The Plaintiff filed the instant lawsuit within 90 days of the incident. The electronically-stored evidence showing Ketchum ordering officers to loosen Plaintiff's restraints was nevertheless destroyed. [Id. at ¶ 15].

Lay denies using restraints to punish the Plaintiff. [Doc. 47-17: Lay Decl. at ¶ 9]. He relied on the judgment of medical professionals to determine whether the restraints were too tight. [Id. at ¶ 8]. He did not ask Starrette or any other nurse to approve the restraints. [Id.]. Plaintiff is just another inmate to Lay and Starrette. [Id. at ¶ 10; Doc. 47-16: Starrette Decl. at ¶ 7]. Lay and Starrette did not then, and do not now, hold any feelings of ill-will towards him and they have never wanted to harm him. [Id.; id.].

The Plaintiff was found guilty of B18, B24, and B25 disciplinary infractions for "disobey order," "profane language," and "threaten to harm/injure staff." [See Doc. 47-3: Defense Ex at 1 (Offender Public Info); Doc. 47-4: Defense Ex at 1 (Disciplinary Verdict Appeal/Review)].

The Defendants have filed several videos from the incidents on February 23, 2024, two of which are particularly relevant to the issues before the Court. Handheld video footage from February 23, 2024 at 5:09 p.m. depicts the following:[9]

| | |
|---|---|
| 00:00 | Plaintiff is standing calmly as Defendant Lay applies restraints. |
| 06:38 | The restraints are completed and Plaintiff is escorted towards a cell by Lay and another officer. |
| 06:53 | During the escort, a nurse in scrubs approaches Plaintiff and inspects his wrists. |
| 06:56 | The nurse bends down and appears to inspect Plaintiff's ankle restraints. |
| 07:00 | The nurse stands up and Plaintiff's escort to a cell continues. |
| 07:52 | Plaintiff is locked in a cell, sitting on the bunk. |

---

[9] The Court will refer to incidents via the time stamp at the bottom of the footage.

[See Manually filed video 24-193, 01838].

Handheld video footage from February 23, 2024 at 7:16 p.m. depicts the following:

| | |
|---|---|
| 00:00 | Two officers approach Plaintiff's closed cell and ask whether Plaintiff wants to step down. |
| 00:21 | Plaintiff's cell door is opened; he is sitting on the bunk in full restraints. |
| 00:33 | Plaintiff approaches the cell door and stands calmly as the connecting strap is removed. |
| 01:21 | Plaintiff is closed back in the cell. |

[See Manually filed video 24-193, 01839].

## IV. DISCUSSION

### A. Pending Motions

As a preliminary matter, the Court will address several pending Motions. The Plaintiff has also filed a Motion for Spoliation [Doc. 59] in which he seeks an adverse inference at trial. This Motion is premature, as such relief that would only be relevant if the matter were to proceed to trail. It will, therefore be denied.

The Plaintiff has also filed a Motion in Limine [Doc. 54] in which he complains that the Defendants' Motion for Summary Judgment refers to Plaintiff's prison disciplinary record in violation of Fed. R. Ev. 404(b). The Defendants have filed a Motion to Stay [Doc. 57] in which they ask for their deadline to respond to Plaintiff's Motion in Limine to be stayed until dispositive motions are decided, and a scheduling order is set by the Court. The Plaintiff's prison disciplinary record is relevant on summary judgment only insofar as it relates to Plaintiff's present Eight Amendment and retaliation claims, and the surrounding factual background. Such information has not been presented on summary judgment as prior bad fact evidence, and the Court will not consider it as such. Insofar as the Plaintiff means to exclude that evidence from being presented

at trial, such is premature. The Motion in Limine will, therefore, be denied.

Finally, the Plaintiff has filed a Motion to Stay [Doc. 58] in which he asks the Court to stay or dismiss the Defendants' Motion for Summary Judgment. He argues that: he requested video footage of his interaction with Nurse Ketchum shortly after the incident; the video is the key evidence in the case; it was never produced despite requesting it in discovery and filing a motion to compel; Plaintiff's restraint was an active use of force, requiring the footage's preservation for five years pursuant to prison policy; and because the Defendants admit that the footage was destroyed, the Court should presume that the lost information would have been unfavorable to the Defendants. The Defendants argue that the Motion should be denied because it is untimely, the Defendants reasonably responded to the Plaintiff's discovery request for video by producing all video within their possession, custody, and control; the Defendants did not destroy evidence; and Plaintiff failed to make a good-faith attempt to resolve the discovery dispute. [Doc. 63].

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citations omitted). The spoliation of evidence may give rise to court-imposed sanctions deriving from a court's inherent power to control the judicial process and litigation. Id. A court may, for instance, order dismissal, grant summary judgment, or permit an adverse evidentiary inference drawn against a party who destroys relevant evidence, to "level the evidentiary playing field and for the purpose of sanctioning improper conduct." Hartford Ins. Co. of Midwest v. American Automatic Sprinkler Systems, Inc., 23 F.Supp.2d 623, 626 (D. Md. 1998) (quoting Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995)). The adverse inference "suggests that the destroyed evidence would have been favorable to the party responsible for its destruction." Id. at

627 (citations omitted). Acts of spoliation, however, do not themselves give rise in civil cases to substantive claims or defenses. Silvestri, 271 F.3d at 590.

A party seeking sanctions for spoliation must prove the following elements:(1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it. Goodman v. Praxair Services, Inc., 632 F.Supp.2d 494, 509 (2009) (quoting Thompson v. U.S. Dep't of Housing & Urban Development, 219 F.R.D. 93, 100 (D. Md. 2003)). An adverse inference about a party's consciousness of the weakness of his case cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction. Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995)

The Court finds that the Plaintiff has not carried his burden of demonstrating that the Defendants had control over the video footage, or that the loss of the video footage was accompanied by an adequately culpable state of mind. Accordingly, the Motion to Stay will be denied.[10]

### B. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate

---

[10] Even if the Court were to assume that video existed that depicts the events described by the Plaintiff, such would not alter the outcome of the Court's summary judgment analysis.

must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. Furthermore, the Supreme Court has made clear that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Here, the Plaintiff has forecast evidence that Defendant Lay placed the Plaintiff in restraints as tight as he could make them, which caused him immediate extreme pain, and that Defendant Starrette approved the restraints despite knowing that they were too tight. Video of the incident, however, depicts the Plaintiff standing calmly while Officer Lay applies hand and leg restraints, then walking without difficulty to a cell, and sitting on a bunk without any distress. A video from approximately two hours later when the first step-down occurred and – before Nurse Ketchum allegedly ordered the restraints to be loosened – likewise depicts the Plaintiff walking and moving without difficulty and in no apparent distress, and standing calmly for officers. This is in stark contrast to the Plaintiff's allegations that Lay applied the restraints as tightly as he could, such that that they caused the Plaintiff immediate extreme pain. Cf. Carter v. Bentley, 2024 WL 4353087 (W.D. Va. Sept. 30, 2024) (finding the existence of a genuine issue regarding excessively tight restraints where the video showed that the inmate complained multiple times about the restraints being too tight, he cries out in pain as the officer maneuvered the restraints after being instructed

11

to loosen them, and it was undisputed that the restraints had to be loosened again several hours later). The Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to the Defendants' use of objectively unreasonable force. See generally Blount v. Miller, 7:14-cv-7, 2015 WL 1505772 (W.D. Va. March 31, 2025) (the use of properly applied ambulatory restraints may not satisfy the objective component); see, e.g., Holley v. Johnson, 7:08-cv-629, 2010 WL 2640328 (W.D. Va. June 30, 2010) (use of ambulatory restraints on disruptive inmate, which prevented him from standing fully upright, move around his cell, move freely, and caused soreness, stiffness for several days, and wrist pain, did not result in more than *de minimis* force and was not objectively harmful enough to support an excessive force claim). The video evidence clearly contradicts the Plaintiff's version of events that the restraints Lay applied were so excessively tight that they caused immediate extremely pain, and that Nurse Starrette should have immediately corrected the same, such that no jury could believe it.

Assuming *arguendo* that Nurse Ketchum ordered the restraints to be loosened at some point after the first step-down, such would not demonstrate the existence of a genuine dispute of material fact regarding the Defendants' use of excessive force. As was discussed supra, the Plaintiff has failed to forecast evidence of any objectively serious use of force. That a nurse ordered Plaintiff's restraints to be loosened several hours after they were applied does not demonstrate that the initial application of the restraints several hours earlier, or Starrette's approval of the same, was objectively unreasonable. Rather, it demonstrates that the Plaintiff was receiving appropriate monitoring pursuant to prison policy. See Alshurafa v. Wimbish, 2021 WL 5138181 (S.D. W.Va. July 1, 2021) (dismissing inmate's excessive force claim that handcuffs were so tight that his hand began to turn purple, and that they were not adequately loosened; there was "scant" evidence that he suffered any injury from the initial application, the cuffs were promptly loosened twice pursuant

12

to his complaints, video confirmed that he stopped complaining after the loosening, and he did not appear to be in any discomfort or distress). The Defendants' Motion for Summary Judgment will, therefore, be granted on Plaintiff's excessive force claims.

### C. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). The causation element "requires that a plaintiff plausibly allege that the defendants were aware of the plaintiff's engaging in a protected activity and show some degree of temporal proximity to suggest a causal connection." Gowen v. Winfield, 130 F.4th 162, 173 (2025) (cleaned up).

Retaliation claims brought by prisoners are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). More, bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id., 40 F.3d at 74.

Here, the forecast of evidence demonstrates that: during an exchange between the Plaintiff

and Defendant Lay on February 23, 2024, Lay grabbed Plaintiff and began dragging him down a hallway; Plaintiff felt that this was unjustified, so he resisted; the Plaintiff was placed in full restraints; and later, Lay applied tight full restraints.

The Plaintiff has failed to forecast any evidence that he was retaliated against for exercising a protected First Amendment right. The Plaintiff fails to forecast any evidence drawing a causal link between a protected First Amendment expression, and an adverse action by Lay. As such, summary judgment will be granted for Defendant Lay on the Plaintiff's retaliation claim.

### D. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that the Defendants violated his constitutional rights, the Defendants are entitled to qualified immunity. As such, summary judgment for the Defendants would also be proper on this ground.

### V. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted

and the Plaintiff's claims are dismissed with prejudice. The pending Motions are denied.

## <u>ORDER</u>

**IT IS, THEREFORE, ORDERED** that:

1. The Defendants' Motion for Summary Judgment [Doc. 46] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE.**

2. The Plaintiff's Motion in Limine [Doc. 54], Moton to Stay [Doc. 58], and Motion for Spoliation [Doc. 59] are **DENIED**.

3. The Defendants' Motion to Stay the deadline to respond to the Motion in Limine [Doc. 57] is **DENIED AS MOOT**.

The Clerk is respectfully instructed to enter a Clerk's Judgment in favor of the Defendant and to close this case.

**IT IS SO ORDERED.**

Signed: July 1, 2026

Frank D. Whitney
Senior United States District Judge

15